**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| EVERETT HENDERSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:22-CV-360 RLW |
| | ) | |
| MISSOURI DEPARTMENT OF | ) | |
| MENTAL HEALTH, et al. | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court on plaintiff Everett Henderson's filing of his amended complaint. Because plaintiff is proceeding *in forma pauperis*, *see* 28 U.S.C. § 1915, the Court must review plaintiff's pleading for frivolousness, maliciousness and for failure to state a claim. For the reasons discussed below, the Court will partially dismiss the amended complaint and will order the Clerk to issue process or cause process to be issued on the non-frivolous portions of the amended complaint. *See* 28 U.S.C. § 1915(e)(2).

*I. Standard of Review*

This Court is required to review a complaint filed *in forma pauperis* and must dismiss it if it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B). An action is frivolous if it "lacks an arguable basis in either law or fact." *Neitzke v. Williams*, 490 U.S. 319, 328 (1989). An action fails to state a claim upon which relief may be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

A claim is facially plausible when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly,* 550 U.S at 556). Although a plaintiff need not allege facts in painstaking detail, the facts alleged "must be enough to raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 555. This standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal,* 556 U.S. at 678. Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw upon judicial experience and common sense. *Id.* at 679. The court must assume the veracity of well-pleaded facts but need not accept as true "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.* at 678 (citing *Twombly,* 550 U.S. at 555).

This Court liberally construes complaints filed by laypeople. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). "Liberal construction" means that "if the essence of an allegation is discernible," the court should "construe the complaint in a way that permits the layperson's claim to be considered within the proper legal framework." *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015) (quoting *Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004)). However, even self-represented complaints must allege facts that, if true, state a claim for relief as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980). Federal courts are not required to assume facts that are not alleged, *Stone*, 364 F.3d at 914-15, or interpret procedural rules so as to excuse mistakes by those who proceed without counsel. *See McNeil v. United States,* 508 U.S. 106, 113 (1993).

## *II. Plaintiff's Confinement Background*

Plaintiff Everett Henderson is currently confined at the Forensic Treatment Center – South ("FTC-South"), formerly known as the St. Louis Psychiatric Rehabilitation Center in St. Louis, Missouri, pursuant to a plea of Not Guilty by Reason of Mental Disease or Defect ("NGRI"). *See State v. Henderson*, No. 22051-03201 (22nd Jud. Circuit, State of Mo.). On September 24, 2005, a criminal complaint was issued charging plaintiff with fourteen (14) counts, including: (1) 1st degree assault of a law enforcement officer; (2) two counts of armed criminal action; (3) 2nd degree assault on a law enforcement officer; (4) two counts of kidnapping; (5) five counts of unlawful use of a weapon (exhibiting); (6) resisting arrest; (7) violating an order of protection; and (8) assault in the first degree. The presiding criminal judge requested a mental examination in the case on October 11, 2005. A grand jury indictment was returned on November 9, 2005, with the same fourteen (14) counts as in the complaint.

On or about October 11, 2005, plaintiff, though counsel, filed a notice of NGRI. In the Court's pretrial psychiatric examination, dated July 17, 2006, and filed by Dr. Richard Scott, plaintiff was diagnosed as having Bi-Polar Disorder I, Manic, with Psychotic Features. Dr. Scott later examined and evaluated plaintiff pursuant to Missouri Revised Statutes Chapter 552, and found plaintiff was incapable of appreciating the nature, quality, or wrongfulness of his conduct, or conforming his conduct to the requirements of the law at the time of the incident which led to the pending charges. On June 12, 2006, the Court reassigned the matter to Division 25 for further proceedings. *See State v. Henderson*, No. 22051-03201. On June 23, 2006, plaintiff entered a plea of not guilty by reason of insanity (NGRI), and the matter was set for a commitment hearing on July 6, 2006. *See, e.g.,* Petitioner's Brief in *Henderson v. Javois*, No 2022-CC00485 (22nd Jud. Cir., State of Mo.).

On July 19, 2006, a petition for appointment of guardian and conservatorship was filed on behalf of plaintiff. *See In re Henderson*, No. 0622-PR00747 (22nd Jud. Cir., State of Mo.). The matter was voluntarily dismissed on June 19, 2007. *Id.*

On February 14, 2020, plaintiff, through counsel, filed a state application for writ of habeas corpus in the St. Louis City Circuit Court seeking release from custody. *Henderson v. Javois*, No 2022-CC00485 (22nd Jud. Cir., State of Mo.). In his application for writ, petitioner asserted that his NGRI plea was void due to a failure by counsel to adhere to a notice that a defendant has no other defenses to be filed. Thus, plaintiff argued he was denied effective assistance of counsel at trial. *Id.*

On March 10, 2023, plaintiff filed a *pro se* motion in his state habeas case for leave to file an amended petition. He seeks release from release from confinement pursuant to Missouri Revised Statute § 632.435 arguing that he no longer suffers from a mental disease or defect.  On May 8, 2023, counsel for plaintiff filed proposed findings of fact and conclusions of law with the Circuit Court relative to the ineffective assistance of counsel claim. Counsel did not address petitioner's pro se release from confinement claim filed on March 10, 2023.  On May 22, 2023, respondent sought additional time, until June 2, 2023, to file a proposed order.

### III.  Plaintiff's Procedural Background in this Action

On March 25, 2022, plaintiff sought leave to proceed in forma pauperis in the instant action in this Court. He filed the action pursuant to 42 U.S.C. § 1983 against eighteen (18) individual defendants, and possibly the Missouri Department of Mental Health. Plaintiff filed two separate documents with the Court which appeared to be pleadings. [ECF No. 1]. The first document was titled "Prisoner Civil Rights Complaint Form," and consisted of ten (10) typewritten pages. [ECF No. 1 at 1-10]. The second document was titled "Complaint," and it consisted of thirty-one (31)

4

typewritten pages. [ECF No. 1 at 11-27]. Neither document was on a court-provided form, as required by Eastern District of Missouri Local Rule 2.06.

**A.  The Claims in Plaintiff's "Prisoner Civil Rights Complaint Form"**

Plaintiff stated in his "Prisoner Civil Rights Complaint Form" that he was forcibly medicated in February 2011 "within days of [his] arrival" at FTC-South. He claimed that the actions of the Missouri Department of Mental Health and the eighteen doctors, nurses, and mental health professionals named in the complaint forcibly medicated him in violation of the U.S. Constitution and Missouri Department of Mental Health Operating Regulation (DOR) 4.152. The allegations in plaintiff's "Prisoner Civil Rights Complaint Form" related to dates of involuntary medication between February 2011 and November 2015.[1] Plaintiff also claimed that his legal paperwork was removed from his possession and telephones were taken away to impede him from contacting an attorney. Plaintiff asserted that when he grieved the forced medication incidents, his grievances were not responded to, or not responded to in a timely manner.

In addition, in plaintiff's "Prisoner Civil Rights Complaint Form," plaintiff asserted that in October 2015, he had an altercation with an FTC-South employee, Onterio Sheppard. Plaintiff stated that he was falsely accused of punching Sheppard and, as a result, charge nurse James Hanson called an "all available," which led to plaintiff being tied down with ankle and wrist cuffs and forcibly injected with psychotropic drugs that "left him disoriented for almost a week." [ECF No. 1 at 6.] Plaintiff claimed that after the incident with Sheppard, he contested being given the drug Haldol. However, Dr. Hayreh, the acting psychiatrist, wrote to plaintiff on October 13, 2015,

---

[1]Regarding the forced medication incidents in 2011, plaintiff states that he appealed the decision to forcibly medicate. This appears to indicate that plaintiff was given some sort of due process relating to the forced medication incidents in this time period. Plaintiff was asked to provide additional facts in his amended complaint concerning the due process provided to him relating to the forced medication time periods.

and indicated that he did not believe plaintiff had a realistic chance of earning discharge without a mood-stabilizing drug. [ECF No. 1 at 7.].

Plaintiff interpreted the letter as intimidation to comply with the forced medication. He claimed in his "Prisoner Civil Rights Complaint Form" that when the "intimidation" did not work, Dr. Hayreh "colluded" with Amy Ramirez (Psychologist) and Roy Wilson (Psychiatrist) to have the requisite two psychiatrists agree to forced drugging in compliance with the language of DOR 4.152. Plaintiff alleged in the "Prisoner Civil Rights Complaint Form" that Ramirez and Wilson were not properly credentialed to provide a second opinion under DOR 4.152, thus, he appealed the decision to forcibly medicate. Plaintiff included with his "Prisoner Civil Rights Complaint Form" a November 9, 2015, letter from the Chief Medical Director for Adult Services for the Department of Mental Health, who indicated that the Missouri Department of Mental Health Operating Regulation 4.152 was not followed.[2] [ECF No. 1 at 7].

**B.  The Claims in Plaintiff's "Complaint"**

In plaintiff's "Complaint" attached to plaintiff's "Prisoner Civil Rights Complaint Form," [ECF No. 1 at 11-27], plaintiff asserted that defendants forcibly medicated him in 2011 at FTC-South. The first seventy-one paragraphs of the "Complaint" mirrored the allegations of the "Prisoner Civil Rights Complaint Form." However, plaintiff also included in the "Complaint" an additional six pages of "Counts" which appeared to include claims brought pursuant to 42 U.S.C. § 1983: (1) violation of the Eighth Amendment and the right to be free from bodily intrusion by defendants McCoy, Wilson, Todd, Carter, and John/Jane Does in February 2011 as a result of

---

[2]The last date listed regarding the forced medication in plaintiff's "Prisoner Civil Rights Complaint Form" was 2015. However, he indicated at the end of his complaint form that the "wrongs alleged in the complaint [were] continuing to occur at the present time." [ECF No. 1 at 10.]. Plaintiff failed to provide information to supplement this conclusory statement.

forced drugging (Count 1); (2) violation of the Eighth Amendment and the right to be free from bodily intrusion by defendants Shepperd, Hanson, Wilson, Hayreh, Ramirez, and John/Jane Does in October 2015 as a result of forced drugging (Count II); (3) violation of plaintiff's Fourteenth Amendment substantive and procedural due process rights by defendants McCoy, Wilson, Todd, Carter. and John/Jane Does in February 2011 as a result of forced drugging (Counts III and IV); (4) violation of plaintiff's Fourteenth Amendment substantive and procedural due process rights by defendants Shepperd, Hanson, Wilson, Hayreh, Ramirez, and John/Jane Does in October 2015 as a result of forced drugging (Counts V and VI); (5) violation of plaintiff's Fourteenth Amendment due process rights by defendants Javois and Wilson based on "state created danger of an institutional culture of covering up and using illegal forced druggings" (Count VII); (6) violation of the Eighth Amendment, failure to train employees on constitutional standards regarding forced drugging (Count VIII); (7) defendants Javois and Wilson's constitutionally inadequate policies, procedures, customs, and practices caused plaintiff's injuries and they failed to protect plaintiff from harm and failed to intervene (Count IX); and (8) violation of plaintiff's Fourteenth Amendment due process right to be released from confinement by defendants Javois and Wilson (Count X). [ECF No. 1 at 19-24].

## C. The Court's Instructions on Amending the Complaint

Because plaintiff's pleading contained numerous deficiencies and was not on a court-provided form, by Memorandum and Order issued on September 2, 2022, the Court Ordered plaintiff to amend his pleading on a court-provided form no later than October 3, 2022. [ECF No. 5].

Plaintiff was provided specific instructions relating to the amendment of his pleading. For example, the Court ordered plaintiff to separate his 2011 claims from his 2015 claims into two

separate lawsuits.[3] Plaintiff was given instructions regarding filling out the complaint form and was specifically told that he needed to address his attempts at "appealing" the 2011 decision to forcibly medicate him.[4] Plaintiff was also instructed that to the extent he wished to reference a DOR regulation, he should attach such regulation to his amended complaint.

## IV.  The Amended Pleading

Plaintiff Everett Henderson, a civil detainee at FTC-South, filed an amended complaint in this action on September 29, 2022. [ECF No. 7]. Plaintiff brings his amended complaint pursuant to 42 U.S.C. § 1983 alleging violations of his civil rights, and names the following entities and individuals as defendants in this action: Missouri Department of Mental Health; FTC-South; Douglas McCoy (Psychiatrist); James Carter (Charge Nurse); Jan Todd (Charge Nurse); Melissa Wickes (Program Director); Carol Kiel (Psychologist); Christina Linden (Social Worker); Roy Wilson (Medical Director); Laurent Javois (Chief Executive Officer); and Felix Vincenze (former

---

[3]Plaintiff was instructed to bring his claims relating to the 2011 events in the present lawsuit and file a new lawsuit relating to the 2015 events.  In accordance with the Court's instructions, plaintiff filed a separate lawsuit concerning the 2015 conduct, filed as Henderson v. Sheppard, 4:22-CV-1056 RWS.

[4]Plaintiff is reminded that there is a five-year statute of limitations for asserting claims under 42 U.S.C. § 1983. Sulik v. Taney Cnty., Mo., 393 F.3d 765, 767 (8th Cir. 2005); see Bell v. Missouri, 253 F. App'x. 606 (8th Cir. 2007) (unpublished per curiam) (dismissal of prisoners' § 1983 action was proper because the five-year limitations period had expired).  As the Court stated in its Memorandum and Order dated September 2, 2022, "Nothing in the pleadings indicates that the action is not barred by the statute of limitations, such that if any amended complaint survives initial review, the defendants may bring a motion to dismiss on these grounds." [ECF No. 5 at 8].

[4]Because plaintiff indicated in his pleading that he "appealed" the 2011 decision to forcibly medicate him, the Court requested that plaintiff allege facts concerning the appeal and attach any documents concerning such an appeal to his amended complaint.

Chief Organizational Officer). Plaintiff sues the defendants in their official and individual capacities.

Plaintiff alleges that on February 18, 2011, around noon, he was handed a forcible medication order from Douglas McCoy, a psychiatrist at FTC-South.[5] He claims he was sitting alone that evening when he was "surrounded" by approximately twenty or thirty FTC-South employees and given a forcible injection of Zyprexa by a charge nurse named James Carter. Plaintiff states that he verbally objected to the injection, "without becoming aggressive," but he was "drugged" anyway.  [ECF No. 7 at 7].

Plaintiff claims that the forcible injection given on February 18, 2011, was a violation of both his federal due process rights under the Fourteenth Amendment and Missouri Department of Mental Health DOR 4.152. Plaintiff asserts that the telephones on his ward were intentionally unplugged so he was unable to call his attorney or notify his family members. He alleges that Carol Kiel, the ward psychologist, was present and observed the drugging and directed the other employees to unplug the phones. [ECF No. 7 at 7].

Plaintiff states that he filed a grievance relative to the forcible medication on February 19, 2011. *Id.* In his grievance he purportedly documented the effects of being drugged. He claims that charge nurse Jan Todd refused to sign his grievance and said he was "fighting the medication." Accordingly, defendant Todd continued to administer "pills and shots."  [ECF No. 7 at 7].

Plaintiff has attached to his amended complaint the purported grievance he submitted to Jan Todd on or about February 19, 2011. [ECF No. 7 at 24]. Plaintiff claims that defendant Todd

---

[5]Plaintiff has attached the forcible medication order from Dr. McCoy to his amended complaint. [ECF No. 7 at 16-17].

9

did not forward the grievance until February 28, 2011. [ECF No. 7 at 6]. In the grievance, plaintiff states:

> Dr. Douglas McCoy wrote an order to involuntarily medicate me. He did not give me notification, verification or copies of a 2nd opinion. Evening shift held me down while a nurse shot me up with what I was told is Zyprexa against my will. I am drowsy, irritable. This medication makes me feel paranoid. Sometimes I cannot understand what others are saying when talking to me. It's hard to write & I can barely read.
>
> I told the Nurses in charge. I told other staff. Everyone I asked said their hands were tied.
>
> I need 2-B taken off this medication ASAP.

[ECF No. 7 at 6].

Program Director Melissa Wickes responded to plaintiff's grievance almost five months later, on July 13, 2011. She stated, "Dr. McCoy followed appropriate notification procedures." [ECF No. 7 at 23].

Plaintiff asserts that in accordance with DOR 4.152 he should have received a response within ten (10) working days. [ECF No. 7 at 23]. He states that he was "never given a hearing, nor a chance to appeal, nor a second opinion and none of the other procedures outlined in DOR 4.152 were followed."[6]

Plaintiff states that at this same time he spoke to Medical Director Roy Wilson who told him that "they did not have to follow any formal procedure to forcibly inject [him] with psychotropic drugs or for their orders to be enforced." [ECF No. 7 at 7]. He claims that Wilson told him:

> The only way you will ever get out of here is through me! Because I am not only the Medical Director; I am also head of the forensic review committee … Unless

---

[6]Plaintiff has attached a copy of the current DOR 4.152. [ECF No. 7 at 18-22]. However, plaintiff indicates that "the procedures outlined in 2011were different." He does not state how the two procedures allegedly differed.

10

you voluntarily take medications and convince us that you truly believe you need
the medications we prescribe, you will be here for a very long time.

*Id.*

Plaintiff states that his social worker at the time, Christina Linden, was "deliberately
indifferent" and "complicit" with the forcible medication orders. He claims that defendant Linden
"confiscated all of [his] legal . . . which severely hindered [his] ability to use the judicial process
and delayed [his] ability to take legal action." [ECF No. 7 at 8].

Plaintiff claims, in a conclusory manner, that defendants Vincenze and Javois were
personally involved in the decision to forcibly medicate him. He asserts that "[t]hey were complicit
in, helped to create and encouraged a culture that covers up psychiatric abuse, intimidation,
coercion and other illegal and morally reprehensible actions." [ECF No. 7 at 8]. Plaintiff, however,
fails to provide any facts relative to the alleged personal involvement of defendants Vincenze and
Javois.

Finally, plaintiff alleges that the State of Missouri created a danger by encouraging
employees to act in a criminal manner by failing to train and supervise employees concerning
forcible medication. Plaintiff asserts that at the time he was forcibly medicated in 2011, there was
no emergency such that he needed to be forcibly medicated. He claims that he was drugged without
a court order, without a second opinion, and without a hearing or right to appeal. Plaintiff alleges
that employees at the Department of Mental Health use forcible medication to torture and control
detainees. [ECF No. 7 at 8].

For relief in this action plaintiff seeks discharge from the custody of the Missouri
Department of Mental Health as well as damages. Plaintiff also asks that the Missouri Department
of Mental Health be required to establish a Mental Health Court. [ECF No. 7 at 10].

*V.  Discussion*

**A.  Claims against the Missouri Department of Mental Health and Forensic Treatment Center - South**

Plaintiff has named the Missouri Department of Mental Health and the Forensic Treatment Center - South [7] as defendants in this action. Because these claims are brought against departments of the State of Missouri, they are treated as being made against the state itself. These claims fail for two reasons.

First, 42 U.S.C. § 1983 "provides for an action against a 'person' for a violation, under color of law, of another's civil rights." *McLean v. Gordon*, 548 F.3d 613, 618 (8th Cir. 2008). *See also Deretich v. Office of Admin. Hearings*, 798 F.2d 1147, 1154 (8th Cir. 1986) (stating that "[§] 1983 provides a cause of action against persons only"). However, "neither a State nor its officials acting in their official capacity are 'persons' under § 1983." *Will v. Michigan Dep't of State Police,* 491 U.S. 58, 71 (1989). *See also Calzone v. Hawley*, 866 F.3d 866, 872 (8th Cir. 2017) (explaining that a "State is not a person under § 1983"); and *Kruger v. Nebraska*, 820 F.3d 295, 301 (8th Cir. 2016) (explaining that "a state is not a person for purposes of a claim for money damages under § 1983"). As the State of Missouri is not a "person," plaintiff is missing an essential element of a § 1983 claim. Therefore, the claims against the Missouri Department of Mental Health and the Forensic Treatment Center - South are subject to dismissal.

Second, plaintiff's claims against these entities, and therefore claims against the State of Missouri, are barred by the doctrine of sovereign immunity. "Sovereign immunity is the privilege of the sovereign not to be sued without its consent." *Virginia Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247, 253 (2011). The Eleventh Amendment has been held to confer sovereign

---

[7]The Forensic Treatment Center - South is a State-owned mental health agency, operated by the Missouri Department of Mental Health.

immunity on an un-consenting state from lawsuits brought in federal court by a state's own citizens or the citizens of another state. *Edelman v. Jordan*, 415 U.S. 651, 662-63 (1974). *See also Webb v. City of Maplewood*, 889 F.3d 483, 485 (8th Cir. 2018) ("The Eleventh Amendment protects States and their arms and instrumentalities from suit in federal court"); and *Egerdahl v. Hibbing Cmty. Coll.,* 72 F.3d 615, 618-19 (8th Cir. 1995) ("Generally, in the absence of consent a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment").

The immunity provided by the Eleventh Amendment bars suit against a state or its agencies for any kind of relief, not merely monetary damages. *Monroe v. Arkansas State Univ.,* 495 F.3d 591, 594 (8th Cir. 2007) (stating that district court erred in allowing plaintiff to proceed against state university for injunctive relief, and remanding matter to district court for dismissal).

There are two "well-established exceptions" to the sovereign immunity provided by the Eleventh Amendment. *Barnes v. State of Mo.*, 960 F.2d 63, 64 (8th Cir. 1992). "The first exception to Eleventh Amendment immunity is where Congress has statutorily abrogated such immunity by clear and unmistakable language." *Id.* The second exception is when a state waives its immunity to suit in federal court. *Id.* at 65. A state will be found to have waived its immunity "only where stated by the most express language or by such overwhelming implications from the text as will leave no room for any other reasonable construction." *Welch v. Tex. Dep't of Highways & Pub. Transp.,* 483 U.S. 468, 473 (1987). Neither exception is applicable in this case.

The first exception is inapplicable because 42 U.S.C. § 1983 – under which this case arises – does not revoke a state's Eleventh Amendment immunity from suit in federal court. *See Will*, 491 U.S. at 66 ("We cannot conclude that § 1983 was intended to disregard the well-established immunity of a State from being sued without its consent"); and *Quern v. Jordan*, 440 U.S. 332,

13

341 (1979) ("[W]e simply are unwilling to believe . . . that Congress intended by the general language of § 1983 to override the traditional sovereign immunity of the States"). The second exception is also inapplicable because the State of Missouri has not waived its immunity in this type of case. *See* Mo. Rev. Stat. § 537.600 (explaining that sovereign immunity is "in effect," and providing exceptions relating to the "negligent acts or omissions by public employees arising out of the operation of motor vehicles . . . within the course of their employment," and regarding "[i]njuries caused by the condition of a public entity's property").

In short, sovereign immunity prevents plaintiff from suing the State of Missouri for any type of relief, whether monetary or injunctive. Further, plaintiff has not demonstrated that an exception to sovereign immunity is present here. Therefore, for this reason as well, his claims against the Forensic Treatment Center - South and the Missouri Department of Mental Health must be dismissed.

### B. Official Capacity Claims

Plaintiff has sued all defendants in their official capacities. In an official capacity claim against an individual, the claim is actually "against the governmental entity itself." *See White v. Jackson*, 865 F.3d 1064, 1075 (8th Cir. 2017). Thus, a "suit against a public employee in his or her official capacity is merely a suit against the public employer." *Johnson v. Outboard Marine Corp.,* 172 F.3d 531, 535 (8th Cir. 1999). *See also Brewington v. Keener*, 902 F.3d 796, 800 (8th Cir. 2018) (explaining that official capacity suit against sheriff and his deputy "must be treated as a suit against the County"); *Kelly v. City of Omaha, Neb.,* 813 F.3d 1070, 1075 (8th Cir. 2016) (stating that a "plaintiff who sues public employees in their official, rather than individual, capacities sues only the public employer"); and *Elder-Keep v. Aksamit,* 460 F.3d 979, 986 (8th

14

Cir. 2006) (stating that a "suit against a public official in his official capacity is actually a suit against the entity for which the official is an agent").

In this case, the defendants are alleged to be employed in various capacities by the State of Missouri. As such, the official capacity claims against them are treated as being made against their employer, the State itself. To the extent that plaintiff is suing for monetary damages, the official capacity claims must be dismissed because the State of Missouri is not a "person" under 42 U.S.C. § 1983 as discussed above. *See Will*, 491 U.S. at 71 (explaining that "neither a State nor its officials acting in their official capacity are 'persons' under § 1983"); and *Kruger*, 820 F.3d at 301 (explaining that "a state is not a person for purposes of a claim for money damages under § 1983"). Likewise, a claim for monetary damages against a state official acting in an official capacity is barred by the Eleventh Amendment. *See Andrus ex rel. Andrus v. Arkansas*, 197 F.3d 953, 955 (8th Cir. 1999) ("A claim for damages against a state employee in his official capacity is barred under the Eleventh Amendment").

To the extent that plaintiff seeks injunctive relief, he must demonstrate the liability of the State of Missouri for harming him. *See Kelly*, 813 F.3d at 1075. Such liability may attach if the constitutional violation "resulted from (1) an official . . . policy, (2) an unofficial custom, or (3) a deliberately indifferent failure to train or supervise." *Mick v. Raines*, 883 F.3d 1075, 1079 (8th Cir. 2018). *See also Marsh v. Phelps Cnty.,* 902 F.3d 745, 751 (8th Cir. 2018) (recognizing "claims challenging an unconstitutional policy or custom, or those based on a theory of inadequate training, which is an extension of the same"). Thus, there are three ways in which plaintiff can prove the liability of the State of Missouri.

First, plaintiff can show the existence of an unconstitutional policy. "Policy" refers to "official policy, a deliberate choice of a guiding principle or procedure made by the [governmental]

official who has final authority regarding such matters." *See Corwin v. City of Indep., Mo.,* 829 F.3d 695, 700 (8th Cir. 2016). For a policy that is unconstitutional on its face, a plaintiff needs no other evidence than a statement of the policy and its exercise. *Szabla v. City of Brooklyn Park, Minn.,* 486 F.3d 385, 389 (8th Cir. 2007). However, when "a policy is constitutional on its face, but it is asserted that a [governmental entity] should have done more to prevent constitutional violations by its employees, a plaintiff must establish the existence of a 'policy' by demonstrating that the inadequacies were a product of deliberate or conscious choice by the policymakers." *Id.* at 390. "A policy may be either a policy statement, ordinance, regulation, or decision officially adopted and promulgated by the [governmental entity's] governing body." *Angarita v. St. Louis Cnty.,* 981 F.2d 1537, 1546 (8th Cir. 1992).

Second, plaintiff can establish a claim of liability based on an unconstitutional "custom." To do so, plaintiff must demonstrate:

1) The existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees;

2) Deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and

3) That plaintiff was injured by acts pursuant to the governmental entity's custom, i.e., that the custom was a moving force behind the constitutional violation.

*Johnson v. Douglas Cnty. Med. Dep't*, 725 F.3d 825, 828 (8th Cir. 2013).

Finally, plaintiff can assert a liability claim against a governmental entity by establishing a deliberately indifferent failure to train or supervise. *See City of Canton, Ohio v. Harris,* 489 U.S. 378, 388 (1989) (explaining that inadequate training may serve as the basis for 42 U.S.C. § 1983 liability only when "the failure to train amounts to deliberate indifference"). To show deliberate

indifference, a plaintiff must prove that the governmental entity "had notice that its procedures were inadequate and likely to result in a violation of constitutional rights." *See Jennings v. Wentzville R-IV Sch. Dist.,* 397 F.3d 1118, 1122 (8th Cir. 2005). Ordinarily, this is done by a plaintiff alleging a "pattern of similar constitutional violations by untrained employees." *See S.M. v. Lincoln Cnty.,* 874 F.3d 581, 585 (8th Cir. 2017).

Plaintiff does not need to specifically plead the existence of an unconstitutional policy or custom. *See Crumpley-Patterson v. Trinity Lutheran Hosp.,* 388 F.3d 588, 591 (8th Cir. 2004). However, at a minimum, the complaint must allege facts supporting the proposition that an unconstitutional policy or custom exists. *Doe ex rel. Doe v. Sch. Dist. of City of Norfolk,* 340 F.3d 605, 614 (8th Cir. 2003). In this case, plaintiff has not presented any facts supporting the proposition that the State of Missouri has harmed him due to an unconstitutional policy, custom, or failure to train.

First, plaintiff has not established the existence of an unconstitutional policy. While he has challenged the use of forced medications, he has presented absolutely no facts regarding the forced medication policy of the State of Missouri. His allegations do not allow the Court to infer that such a policy is unconstitutional, either in its entirety or as applied to him. Rather than present allegations regarding a policy or the acts of policymakers, plaintiff's factual allegations focus on the actions of individuals who he believes are medicating him for improper reasons.

Second, plaintiff has not demonstrated that he was harmed by an unconstitutional custom, as he has not shown the "existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the [State of Missouri's] employees," much less that policymakers were deliberately indifferent to or tacitly authorized such misconduct.  Plaintiff's allegations do not adequately describe a persistent pattern of unconstitutional misconduct. *S.M.,* 874 F.3d at 585.

Third, plaintiff has not properly alleged that the State of Missouri was deliberately indifferent in failing to train or supervise its employees. To show deliberate indifference, plaintiff must prove that the state "had notice that its procedures were inadequate and likely to result in a violation of constitutional rights." *Jennings,* 397 F.3d at 1122. Typically, this is done by alleging a "pattern of similar constitutional violations by untrained employees," which plaintiff has not done here. *S.M.,* 874 F.3d at 585.

Finally, to the extent that plaintiff might seek to hold the State of Missouri liable for the actions of its employees, the Court notes that a governmental entity cannot be held liable under 42 U.S.C. § 1983 simply because it employs a tortfeasor. *See A.H. v. City of St. Louis, Mo.,* 891 F.3d 721, 728 (8th Cir. 2018) ("In an action under § 1983, a [governmental entity] . . . cannot be liable on a *respondeat superior* theory").

For all the reasons discussed above, plaintiff has failed to state official capacity claims against defendants. Therefore, the official capacity claims must be dismissed.

## C. Individual Capacity Claims

Plaintiff has sued all the defendants in their individual capacities. Individual liability in a 42 U.S.C. § 1983 case is personal. *See Frederick v. Motsinger*, 873 F.3d 641, 646 (8th Cir. 2017). In other words, "[g]overnment officials are personally liable only for their own misconduct." *S.M. v. Krigbaum*, 808 F.3d 335, 340 (8th Cir. 2015). As such, § 1983 liability "requires a causal link to, and direct responsibility for, the deprivation of rights." *Mayorga v. Missouri*, 442 F.3d 1128, 1132 (8th Cir. 2006) (quoting *Madewell v. Roberts*, 909 F.2d 1203, 1208 (8th Cir. 1990)). *See also Kohl v. Casson,* 5 F.3d 1141, 1149 (8th Cir. 1993) (dismissing plaintiff's excessive bail claims because none of the defendants set plaintiff's bail and, therefore, "there can be no causal connection between any action on the part of the defendants and any alleged deprivation" of

18

plaintiff's rights). To that end, a plaintiff must allege facts connecting the defendant to the challenged action. *See Bitzan v. Bartruff*, 916 F.3d 716, 717 (8th Cir. 2019).

### 1. Forced medication under the Fourteenth Amendment

Plaintiff claims that Douglas McCoy was the psychiatrist who signed the order on February 18, 2011, to have him forcibly medicated. He alleges that nurse James Carter gave him the actual injection of Zyprexa on that date.  He also alleges Carol Kiel supervised the forced injection. Plaintiff is a civilly committed individual and therefore is protected by the Fourteenth Amendment. *See Karsjens v. Lourey*, 988 F.3d 1047, 1052 (8th Cir. 2021).

The question as to whether a state may forcibly medicate a civilly committed individual has both substantive and procedural aspects. *See Washington v. Harper*, 494 U.S. 210, 220 (1990). "The substantive issue involves defining the protected constitutional interest, as well as identifying the conditions under which competing interests may outweigh it," while the "procedural issue concerns the minimum process required by the Constitution." *Morgan v. Rabun*, 128 F.3d 694, 696 (8th Cir. 1997). In other words, "the substantive issue is what factual circumstances must exist before the State may administer antipsychotic drugs to the prisoner against his will; the procedural issue is whether the State's nonjudicial mechanisms used to determine the facts in a particular case are sufficient." *Washington*, 494 U.S. at 220.

Regarding the substantive component, the Due Process Clause of the Fourteenth Amendment gives an individual "a significant liberty interest in avoiding the unwanted administration of antipsychotic drugs." *Id.* at 221-22. As such, the state is permitted to treat a seriously mentally ill inmate with antipsychotic drugs against his will if the inmate is a danger to himself or others, and the treatment is in the inmate's medical interests. *Id.* at 227. *See also*

*Morgan*, 128 F.3d at 697 (explaining that with regard to substantive due process, a committed individual's due process rights are not violated if he is a danger to himself or others).

An inmate may also be forcibly medicated "if he (1) suffers from a mental disorder and (2) is gravely disabled," which includes "severe deterioration in routine functioning evidenced by repeated and escalating loss of cognitive or volitional control over his or her actions and is not receiving such care as is essential for his or her health or safety." *Green v. Dormire*, 691 F.3d 917, 923 (8th Cir. 2012) (determining that Missouri policy providing for forced medication of a "gravely disabled" inmate comported with substantive due process).

Allegations that forced medication was not in an individual's best interest may support a claim under 42 U.S.C. § 1983. *See Thomas v. Eschen*, 928 F.3d 709, 713 (8th Cir. 2019) (explaining that if state officials force a civilly committed individual to take drugs having no connection to his mental illness, or intentionally injure him while treating him, the individual may have a viable claim for damages under § 1983). However, more than "threadbare allegations" are required to support a claim. *Id*. at 714 (noting that plaintiff's claim that he had been "medicated" for the "wrong reasons" did not demonstrate "what, when, where, why, or how [the] drugs were administered").

To meet the procedural requirements of due process in the involuntary administration of antipsychotic drugs to a prisoner, there must be: (1) notice; (2) the right to be present at an adversarial hearing; (3) the right to present witnesses; and (4) the right to cross-examine witnesses. *See Washington*, 494 U.S. at 235. *See also Doby v. Hickerson*, 120 F.3d 111, 113 (8th Cir. 1997) (explaining that the "minimal constitutional requirements for satisfying procedural due process when a state involuntarily administers antipsychotics to a prisoner" consists of "an independent decisionmaker as well as for notice, the right to be present at an adversary hearing, and the right

20

to present and cross-examine witnesses"); A judicial hearing is not required, and the hearing may be adjudicated by non-treating medical personnel. *Washington*, 494 U.S. at 231.

Though *Harper* concerned with a prison inmate, the same factors it established have been applied to civilly committed individuals who have been forcibly medicated. *See Morgan*, 128 F.3d at 696-97 (applying *Harper* factors to an individual committed to the Missouri Department of Mental Health). That is, the "governmental interests in running a state mental hospital are similar in material aspects to that of running a prison," as the state has "a vital interest in ensuring the safety of their staff, other patients, and of course in ensuring the patients' own safety." *Id*. at 697.

In this case plaintiff alleges that defendants McCoy, Carter, and Kiel did not follow the proper procedural requirements of the forcible medication procedures. He claims he was not provided notice of the forcible medication, the right to a hearing or the right to witnesses relative to the forcible medication. Further, plaintiff states that when he objected to being medicated, he was drugged anyway, and the phones were unplugged under the supervision of defendant Kiel to limit his access to outside persons to stop the involuntary medication. Moreover, it appears that the forcible medication occurred not just on one occasion, but also on more than one occasion in 2011. Plaintiff claims that although he objected to the medication, defendant Todd continued to administer pills and shots. When plaintiff spoke to Medical Director Roy Wilson about the issue, Wilson allegedly told plaintiff "they did not have to follow any formal procedure to forcibly inject [him] with psychotropic drugs," and he purportedly denied plaintiff's request to stop the involuntary medications.

Based on the aforementioned, the Court finds that plaintiff has alleged enough to set forth a claim for due process violations for his involuntary medication claims from 2011 against defendants McCoy, Kiel, Carter, Todd, and Wilson in their individual capacities.

### 2. First Amendment access to courts

The United States Supreme Court has stated that it is "established beyond doubt that prisoners have a constitutional right of access to the courts." *Bounds v. Smith*, 430 U.S. 817, 821 (1977). This right requires that prisons provide "a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts." *Lewis v. Casey*, 518 U.S. 343, 351 (1996).

Typically, access to courts claims result from deficiencies in a prison's legal assistance program or law library that hinders an inmate's ability to bring a claim. *Williams v. Hobbs*, 658 F.3d 842, 852 (8th Cir. 2011). However, "the due process clause is not meant to enable the prisoner to discover grievances, and to litigate effectively once in court." *Id.* "To prove a violation of the right of meaningful access to the courts, a prisoner must establish [that] the state has not provided an opportunity to litigate a claim challenging the prisoner's sentence or conditions of confinement in a court of law, which resulted in actual injury, that is, the hindrance of a nonfrivolous and arguably meritorious underlying legal claim." *Hartsfield v. Nichols,* 511 F.3d 826, 831 (8th Cir. 2008). To prove actual injury, the plaintiff must demonstrate that a nonfrivolous legal claim has been frustrated or is being impeded. *White v. Kautzky*, 494 F.3d 677, 680 (8th Cir. 2007). For example, an inmate must show that a complaint that he prepared was dismissed due to a technical requirement that a law library's inadequacies prevented him from knowing, or that a library was so inadequate that it prevented him from filing a complaint for actionable harm at all. *Myers v. Hundley,* 101 F.3d 542, 544 (8th Cir. 1996).

"There is no one method of satisfying the constitutional requirement, and a prison system may experiment with prison libraries, jailhouse lawyers, private lawyers on contract with the prison, or some combination of these and other devices." *Bear v. Fayram,* 650 F.3d 1120, 1123

(8th Cir. 2011). A prison system does not run afoul of the constitution if there is no actual harm to an inmate's access rights. *Bear v. Kautzky*, 305 F.3d 802, 806 (8th Cir. 2002). *See also Gardner v. Howard,* 109 F.3d 427, 431 (8th Cir. 1997) (stating that for an inmate to assert a successful claim of denial of meaningful access to the courts, he must demonstrate that he has suffered prejudice).

Plaintiff believes that his First Amendment rights were violated in two ways. First, he claims that psychologist Carol Kiel told employees on his ward to unplug the phones to prevent him from contacting an attorney at the time he received the injection of Zyprexa on February 18, 2011. Plaintiff additionally alleges that social worker Christina Linden confiscated his legal work on an unspecified date to delay judicial action.

Because plaintiff has not alleged that he suffered prejudice to a pending legal claim or that he was completely unable to file a legal claim relating to the involuntary medication issue, he has failed to allege a First Amendment claim in this instance against defendants Kiel and Linden.

### 3. Fourteenth Amendment due process grievance claims

Plaintiff claims that Jan Todd, the day shift nurse, refused to sign his grievance on February 19, 2011. He asserts that his grievance was not filed or forwarded by defendant Todd until February 28, 2011, although he acknowledges that it was eventually filed. Although plaintiff alleges that his grievance was forwarded to Program Director Melissa Wickes, he complains that it took her almost five months to respond. He further asserts that he was not given a hearing or a chance to appeal his grievance, and not allowed to receive a "second opinion." Plaintiff also complains that defendants failed to follow the grievance procedures set forth in the Missouri Department of Mental Health regulations.

An inmate has a liberty interest in the nature of his confinement, but not an interest in the procedures by which the state believes it can best determine how he should be confined. *Kennedy*

23

*v. Blankenship*, 100 F.3d 640, 643 (8th Cir. 1996). As such, there is no constitutional liberty interest in having state officers follow state law or state regulations. *Phillips v. Norris*, 320 F.3d 844, 847 (8th Cir. 2003). *See also Jenner v. Nikolas*, 828 F.3d 713, 716-17 (8th Cir. 2016) (explaining that "[t]he existence of a state-mandated procedural requirement does not, in and of itself, create a constitutionally protected liberty interest").

To that end, a state grievance procedure is a procedural right only and does not confer upon a detainee a substantive right. *Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993). *See also Lomholt v. Holder*, 287 F.3d 683, 684 (8th Cir. 2002) (agreeing with district court that "defendants' denial of [plaintiff's] grievances did not state a substantive constitutional claim"); and *Fallon v. Coulson*, 5 F.3d 531, 1993 WL 349355, at *1 (8th Cir. 1993) (unpublished opinion) (stating that the failure of defendants "to acknowledge receipt of and respond to plaintiffs' grievances pursuant to prison procedure did not violate any of plaintiffs' constitutional rights").

As such, plaintiff's claims based on defendants' alleged failure to follow the procedural aspects of the Missouri Department of Mental Health's grievance procedure fail to allege a constitutional claim.

### 4.    No personal liability as to Defendants Javois and Vincenze

In this case, plaintiff asserts that Laurent Javois is the current Chief Executive Officer at FTC-South, and Felix Vincenze was the former Chief Organizational Officer at FTC-South. He claims, in conclusory manner, that defendants Vincenze and Javois were personally involved in the decision to forcibly medicate him. Plaintiff has not, however, stated any facts regarding their purported personal involvement in the alleged events in this action. Because plaintiff alleges no harm by these defendants, he has failed to state a claim for relief against them. *See Potter v. Clark*, 497 F.2d 1206, 1207 (7th Cir. 1974) ("Where a complaint alleges no specific act or conduct on the

part of the defendant and the complaint is silent as to the defendant except for his name appearing in the caption, the complaint is properly dismissed, even under the liberal construction to be given pro se complaints"); *see also Krych v. Hvass*, 83 F. App'x 854, 855 (8th Cir. 2003) (affirming dismissal of *pro se* complaint against defendants who were merely listed as defendants in the complaint and there were no allegations of constitutional harm against them); *see Mayorga,* 442 F.3d at 1132 (explaining that 42 U..S.C. § 1983 liability "requires a causal link to, and direct responsibility for, the deprivation of rights"); *Boyd v. Knox*, 47 F.3d 966, 968 (8th Cir. 1995) (claims sounding in respondeat superior are not cognizable under § 1983).

### D.  Plaintiff's Request for Release from Confinement

As part of his request for relief, plaintiff seeks immediate release from commitment. The Court notes that this request is not properly brought in a 42 U.S.C. § 1983 action. If plaintiff wishes to challenge his civil commitment, that challenge must be brought pursuant to a petition for writ of habeas corpus brought pursuant to 28 U.S.C. § 2254. *See Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973) ("[W]hen a state prisoner is challenging the very fact or duration of his physical imprisonment, and the relief he seeks is a determination that he is entitled to immediate release or a speedier release from that imprisonment, his sole federal remedy is a writ of habeas corpus"). *See also Wilkinson v. Dotson*, 544 U.S. 74, 78 (2005) (stating the Supreme Court "has held that a prisoner in state custody cannot use a [42 U.S.C.] § 1983 action to challenge the fact or duration of his confinement"); and *Adams v. Agniel,* 405 F.3d 643, 644-45 (8th Cir. 2005) (explaining that a habeas action is the proper vehicle for a prisoner to challenge the legality of his sentence or seek immediate or speedier release). Therefore, to the extent that plaintiff is seeking release from his civil commitment, his request for such relief must be denied.

### VI.  Motion for Reconsideration of the
### Denial of the Motion for Appointment of Counsel

Plaintiff has also filed a motion for reconsideration of the Court's denial of his motion for appointment of counsel. A self-represented litigant has "neither a constitutional nor a statutory right to appointed counsel in civil cases." *Patterson v. Kelley*, 902 F.3d 845, 850 (8th Cir. 2018) (citing *Phillips v. Jasper Cnty. Jail*, 437 F.3d 791, 794 (8th Cir. 2006)). A district court may appoint counsel in a civil case if it is "convinced that an indigent plaintiff has stated a non-frivolous claim . . . and where the nature of the litigation is such that plaintiff as well as the court will benefit from the assistance of counsel." *Id.* (citing *Johnson v. Williams,* 788 F.2d 1319, 1322 (8th Cir. 1986)). When determining whether to appoint counsel for an indigent litigant, a court considers relevant factors such as the factual complexity of the issues, the litigant's ability to investigate the facts and present his or her claims, the existence of conflicting testimony, and the complexity of the legal arguments. *Id.* (citing *Phillips*, 437 F.3d at 794).

At present, there is no indication that plaintiff is incapable of representing himself, or that the factual or legal issues are sufficiently complex to justify the appointment of counsel. However, recognizing that circumstances may change, the Court will deny plaintiff's motion for reconsideration and for appointment of counsel without prejudice, and will consider future such motions, if appropriate, as the case progresses.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's motion for reconsideration of the motion denying his appointment for counsel [ECF No. 6] is **DENIED** without prejudice, and plaintiff's request for appointment of counsel is **DENIED at this time**.

**IT IS FURTHER ORDERED** that the Clerk shall issue process or cause process to issue upon the amended complaint regarding plaintiff's claims of violations of his due process rights

under the Fourteenth Amendment due to his involuntary medication by defendants Douglas McCoy, Roy Wilson, Carol Kiel, Jan Todd, and James Carter. These defendants shall be served with summons, in their individual capacities, at St. Louis Forensic Treatment Center, 5300 Arsenal Street, St. Louis, Missouri 63139.

**IT IS FURTHER ORDERED** that, pursuant to 42 U.S.C. § 1997e(g)(2), defendants Douglas McCoy, Roy Wilson, Carol Kiel, Jan Todd, and James Carter shall reply to plaintiff's claims within the time provided by the applicable provisions of Rule 12(a) of the Federal Rules of Civil Procedure.

**IT IS FURTHER ORDERED** that the Clerk shall not issue process or cause process to issue upon the amended complaint as to plaintiff's claims against Melissa Wickes, Christina Linden, Laurent Javois, and Felix Vincenze in their individual and official capacities because, as to the claims against these defendants, the amended complaint is legally frivolous or fails to state a claim upon which relief can be granted, or both.

**IT IS FURTHER ORDERED** that the Clerk shall not issue process or cause process to issue upon the amended complaint as to plaintiff's claims against Douglas McCoy, Roy Wilson, Carol Kiel, Jan Todd, and James Carter in their official capacities because, as to these claims against the defendants, the amended complaint is legally frivolous or fails to state a claim upon which relief can be granted, or both.

**IT IS FURTHER ORDERED** that the Clerk shall not issue process or cause process to issue upon the amended complaint as to plaintiff's claims against the Missouri Department of Mental Health and the Forensic Treatment Center-South, formerly known as the St. Louis Psychiatric Center, because, as to these defendants, the amended complaint is legally frivolous or fails to state a claim upon which relief can be granted, or both.

**IT IS FURTHER ORDERED** that an appeal of this Order of Partial Dismissal would not be taken in good faith.

_Ronnie L. White_

**RONNIE L. WHITE**
**UNITED STATES DISTRICT JUDGE**

Dated this <u>13th</u> day of June, 2023.